Jean Adams LINDNER,
Plaintiff–Appellant,

v.

Louis W. SULLIVAN, M.D., Secretary
of Health and Human Services,
Defendant–Appellee.

No. 89–2131.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 20, 1990.
Decided May 24, 1990.

Frederick J. Daley, Dorie Budlow, Chicago, Ill., for plaintiff-appellant.

William T. Clabault, Asst. U.S. Atty., Office of the U.S. Atty., Donna L. Calvert, Michael C. Messer, Dept. of Health and Human Services, Region V, Office of the Gen. Counsel, Chicago, Ill., for defendant-appellee.

Before CUMMINGS, CUDAHY and MANION, Circuit Judges.

CUDAHY, Circuit Judge.

Jean Adams Lindner is disabled. The only question presented in this case is precisely *when* she became disabled.

## I.

Mrs. Lindner has been suffering from back pain for a number of years. She claims that her pain became so severe that she permanently left her job at Western Electric on June 22, 1981. She has not worked since that date. Mrs. Lindner was born on December 6, 1930, and had worked at Western Electric continuously since 1965. She performed a number of jobs during her 16 years at the company; her last position involved soldering telephone circuits and transporting the trays to nearby ovens.

Mrs. Lindner has seen a battery of doctors over the last decade. Dr. Benton, whom she consulted in 1979, diagnosed the source of her pain as degenerative joint disease of the spine and hip. At that time, Dr. Benton noted that Mrs. Lindner appeared depressed due to the death of her second husband the previous year. Two years later, Mrs. Lindner sought treatment from Dr. Benton, again complaining of pain in her back and left hip as well as in her arms. Dr. Benton observed that Mrs. Lindner demonstrated mild depression and increased anxiety. He prescribed anti-inflammatory medicine and recommended that Mrs. Lindner reduce her weight and begin a physical therapy program.

In November 1981, Mrs. Lindner's regular physician, Dr. Theodore Gasteyer, determined that she was suffering from arthritis of the spine. Neither at that time nor when she consulted Dr. Gasteyer again in January 1982, however, did Mrs. Lindner show signs of paralysis or weakness. She did not need a cane or other device to assist her in walking. On January 25, 1982, Dr. Ronald Jones, a neurosurgeon, confirmed Dr. Gasteyer's diagnosis of spinal arthritis. Dr. Jones prescribed Motrin to control Mrs. Lindner's pain.

On December 29, 1981, Dr. Clarence Rourke reviewed the medical evidence and found Mrs. Lindner capable of light work.[1]

---

1. A person is capable of "light work" if she has the ability to lift up to 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. A job may also be classified

On February 24, 1982, Dr. W.D. Donnelly reviewed the evidence and determined that Mrs. Lindner was capable of medium work.[2]

Dr. Jones examined Mrs. Lindner on March 4, 1982, and concluded that the conservative treatment he had prescribed had failed to alleviate Mrs. Lindner's pain. Dr. Jones operated on Mrs. Lindner on March 14, 1982, and removed a herniated disc. Subsequently, Mrs. Lindner reported a reduction of the pain in her left leg. In October 1982, Mrs. Lindner continued to complain to Dr. Jones of pain in her neck and arms, but said her back pain had been improving.

Two months later, Mrs. Lindner consulted another neurosurgeon, Dr. W.M. Bogdanowicz. He diagnosed chronic back pain with no neurological abnormalities. This conclusion was also reached by the doctors who treated Mrs. Lindner at St. Mary's Hospital in Madison, Wisconsin, on January 17, 1983. Dr. Thomas Rush, a rheumatologist, found that Mrs. Lindner's physical examination while at the hospital was "quite negative." At St. Mary's, Mrs. Lindner also underwent a psychiatric evaluation on January 19, 1983, which revealed that Mrs. Lindner suffered from chronic tension, perhaps accompanied by underlying depression. When she saw Dr. Nathan Pitaro that same month, she was unable to lift from the front and could occasionally carry 6 to 10 pounds only along her side. She could sit a total of three hours per day and stand and walk a maximum of four hours daily. Mrs. Lindner continued to see Dr. Pitaro monthly for her back problem, and she did daily exercises to relieve her pain.

Beginning in 1986, Mrs. Lindner began to seek treatment for psychological problems. Between March and October of that year, she was evaluated by four different mental health practitioners, each of whom diagnosed major depression. In addition to the physical pain she endured, Mrs. Lindner suffered a number of emotional traumas. Her second husband died in 1978; her mother passed away in 1984; and she described one of her sons as an alcoholic. Each of the four practitioners who examined Mrs. Lindner in 1986 observed, however, that she became particularly tearful when discussing the June 1985 death of her third husband, and each practitioner therefore attributed her depression primarily to that event.

The administrative law judge ("ALJ") concluded that the record demonstrated that Mrs. Lindner suffered from "an impairment which significantly limits her ability to perform basic work activities, including standing, walking, and lifting...." Admin.Rec. at 231. However, the ALJ found that these physical impairments did not meet the severity level of the impairments listed in 20 C.F.R. section 404, Subpart P, Appendix 1.[3] Consequently, the ALJ applied the residual functional capacity provisions, 20 C.F.R. sections 404.1520(e) and 404.1545. Based on the record evidence, the ALJ found "that prior to December 6, 1985, [Mrs. Lindner] retained the residual functional capacity for light work and was able to return to work at Western Electric." Id. at 235. However, he determined that as of December 6, 1985, Mrs. Lindner was no longer able to perform her past work because of her physical impairments. The ALJ further found that since "at least March, 1986, [Mrs. Lindner] has been further compromised by situational depression with melancholia and anxiety." Id. at 237. Finally, the ALJ concluded that Mrs. Lindner's impairments, together with her age, education and work skills, prevented her from obtaining other work in the national economy. See 20 C.F.R. §§ 404.-1520(f), 404.1560–69.

as light work even though it involves lifting very little weight if it requires "a good deal" of walking or standing or sitting with some pushing of arm or leg controls. 20 C.F.R. § 404.1567(b) (1989).

"Sedentary work" is a job that involves lifting a maximum of 10 pounds at a time and only occasional walking and standing. 20 C.F.R. § 404.1567(a) (1989).

2. "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c) (1989).

3. Unless otherwise noted, we refer to the 1989 edition of the Code of Federal Regulations.

The Appeals Council adopted the ALJ's recommended findings.[4] In response to Mrs. Lindner's challenge to the ALJ's selection of December 6, 1985, as the onset date of her disability, the Council held that "given the lack of substantial evidence documenting the presence of consistent and significant motor, sensory or reflex deficits in either the upper or lower extremities prior to December 1985, the claimant was not physically precluded from performing the full range of light and sedentary work, including her past relavant [sic] work as a factory worker." Admin.Rec. at 196. As for Mrs. Lindner's mental condition, the Council concluded that "the record fails to document the presence of a significant mental impairment prior to December 1985 which either singly or in combination with a physical impairment would have precluded the performance of her past relevant work." *Id.* at 197.

Mrs. Lindner appealed the Council's decision to the district court, maintaining her claim that she became entitled to disability benefits as of June 22, 1981. The district judge reviewed the record and the administrative decisions. He ruled that substantial evidence supported neither Mrs. Lindner's claimed onset date nor the December 6, 1985, date selected by the ALJ. Instead, he determined that Mrs. Lindner became disabled in June 1985, when her second husband died. The Secretary does not contest this modification of the ALJ's decision, but Mrs. Lindner repeats her contention that the true onset date of her disability was June 22, 1981.

## II.

Under 42 U.S.C. section 405(g), the district court has power to affirm, modify or reverse, with or without remand, the Secretary's decision to grant or deny a claim for disability benefits. Section 405(g) also provides that the Secretary's findings of fact shall be conclusive if supported by substantial evidence. "Substantial evidence" is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)).

■ We agree with the district judge that the ALJ's selection of December 6, 1985, as the onset date of Mrs. Lindner's disability was not supported by substantial evidence. As the district court observed, no major event occurred on December 6, 1985, that impacted upon Mrs. Lindner's physical or mental condition; that date was significant only because it was Mrs. Lindner's fifty-fifth birthday.[5] Further, the ALJ failed to account for the fact, attested to by four mental health practitioners, that Mrs. Lindner's major depression was triggered by her third husband's death. Therefore, we agree with the district court that Mrs. Lindner became totally disabled no later than June 3, 1985—the day her third husband died.[6]

■ Mrs. Lindner first brought her claim for disability benefits in December 1981. Since that time, she has appeared three times before two different ALJs, has had her case reviewed each time by the Appeals Council and has appealed twice to the district court. In short, Mrs. Lindner has spent most of the last decade litigating

---

**4.** We therefore assume that Mrs. Lindner has been receiving disability benefits as of December 6, 1985.

**5.** Mrs. Lindner suggests that the reason the ALJ settled on December 6, 1985, as her disability onset date was that at age 55, she became a "person of advanced age," to whom different regulations applied. *See* 20 C.F.R. § 404.1563(d) ("If you are severely impaired and of advanced age and you cannot do medium work ..., you may not be able to work

unless you have skills that can be used in (transferred to) less demanding jobs which exist in significant numbers in the national economy.").

**6.** Because the parties failed to supply us with the exact date of Mr. Lindner's death, we were forced to scour the entire administrative record. We found in a report prepared by Dr. Irving Sherman and dated August 1, 1986, a reference to June 3, 1985, as the precise date of Mr. Lindner's death. Admin.Rec. at 501.

her claim for disability benefits. We recognize the merit of bringing this interminable litigation to an end as soon as resolution of the major issues will permit. If the only issue in this case were the date on which Mrs. Lindner's mental impairment, in combination with her physical condition, became disabling, we would simply affirm the district court's modification of the Secretary's decision. *See Harris v. Secretary of Health and Human Servs.*, 821 F.2d 541, 544–45 (10th Cir.1987) (per curiam) (given available evidence, remand for additional factfinding would serve no useful purpose, but would merely delay receipt of benefits); *see also Podedworny v. Harris*, 745 F.2d 210, 223 (3rd Cir.1984); *Parsons v. Heckler*, 739 F.2d 1334, 1341 (8th Cir.1984); *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir.1981); *Rini v. Harris*, 615 F.2d 625, 627 (5th Cir.1980). However, the question whether Mrs. Lindner was *physically* disabled prior to June 3, 1985, has been left in limbo.

On January 10, 1985 (Mrs. Lindner's first appeal to the district court following the Secretary's initial denial of her claim for disability benefits), Magistrate James T. Balog recommended to District Judge Thomas R. McMillen that Mrs. Lindner's case be remanded to the Secretary. Admin.Rec. at 397–413. Magistrate Balog observed that the ALJ had failed to evaluate, or even mention, Mrs. Lindner's hospitalization, hemilaminectomy, diskectomy and subsequent rehabilitation efforts; further, the ALJ "gave short shrift" to Dr. Jones's conclusion, contained in a detailed report, that Mrs. Lindner was totally disabled as of at least April 15, 1982, about one month after her back surgery. *Id.* at 410–11.[7]

Judge McMillen accepted Magistrate Balog's recommendation and remanded the case to the Secretary. ALJ George A. Bowman, Jr., considered the evidence mentioned by Magistrate Balog and again found that Mrs. Lindner retained sufficient residual functional capacity to perform her past work. *Id.* at 423. Mrs. Lindner appealed that decision, and the Appeals Council remanded the case for reconsideration in light of the new rules relating to mental impairments. *Id.* at 426–27. At Mrs. Lindner's request, the case was transferred to a new ALJ, Donald Niersbach, whose findings are at issue in this appeal.

Although ALJ Niersbach discussed the medical evidence relating to Mrs. Lindner's mental impairment in his recommendation of January 26, 1987, he never discussed the evidence mentioned by Magistrate Balog. Further, the Appeals Council did not remedy this deficit in its decision of September 16, 1987, adopting ALJ Niersbach's recommendations. Magistrate Balog had additionally recommended remand for more detailed findings concerning the physical requirements of Mrs. Lindner's past work. Admin.Rec. at 411. ALJ Niersbach and the Appeals Council also neglected to address this point.[8] Thus, the question whether Mrs. Lindner's physical impairments established her entitlement to disability benefits before June 3, 1985, remains unresolved.

### III.

We vacate the judgment and remand this case to the Secretary for a determination of the question whether, in light of the evidence referred to by Magistrate Balog and other medical evidence contained in the

---

7. Dr. Jones apparently continued to consider Mrs. Lindner disabled from work on July 14, 1983. Admin.Rec. at 445–46. Mrs. Lindner's regular physician, Dr. Gasteyer, also found her totally disabled, and unlikely to improve, on July 18, 1983. *Id.* at 447–48. Dr. Pitaro, who treated Mrs. Lindner from April 1984 until July 1986, likewise made a finding of total disability on July 19, 1984, and noted that while she had improved, she continued to experience severe limitations of functional capacity, such that she was incapable of sedentary activity, and her prognosis for recovery was indefinite. *Id.* at 449–50.

8. Magistrate Balog also recommended remand for more explicit findings about the full extent of Mrs. Lindner's "present" residual functional capacity. Admin.Rec. at 411–12. Of course, Magistrate Balog was referring to Mrs. Lindner's residual functional capacity in 1985. Since Mrs. Lindner has been found disabled as of at least June 3, 1985, the ALJ should consider whether and when Mrs. Lindner first suffered a severe physical impairment, as defined in the regulations, and then, if appropriate, consider her residual functional capacity as of that date.

record, Mrs. Lindner became disabled prior to June 3, 1985.

IT IS SO ORDERED.